UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kevin Hughes

    v.                                          Civil No. 20-cv-025-LM
                                                  Opinion No. 2022 DNH 003 P

Secretary, United States
Department of Housing and
Urban Development

**O R D E R**

Plaintiff Kevin Hughes brings this suit against the Secretary of the U.S. Department of Housing and Urban Development ("HUD"), alleging that HUD illegally foreclosed on the home where he lives. Hughes alleges (1) that HUD failed to provide proper notice of the foreclosure sale, and (2) that HUD failed to conduct the foreclosure sale on the premises. See 12 U.S.C. § 3758. Hughes requests that the court rescind the foreclosure sale and reinstate the mortgage. HUD moves to dismiss, or in the alternative, moves for summary judgment. Doc. no. 28. Hughes objects to HUD's summary judgment motion with respect to his first claim regarding improper notice, but concedes that HUD's motion should be granted with respect to his second claim, because the facts elicited in discovery show that a foreclosure sale did properly take place on the premises. For the following reasons, the court grants HUD's motion for summary judgment.

**LEGAL STANDARD**

A moving party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmoving party.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

## BACKGROUND

I. Facts

In 1969, Hughes's parents, Patrick J. Hughes II and Armande Hughes, purchased a single-family home located at 5 Maywood Drive, Nashua, New Hampshire (the "Property").  Both Patrick and Armande were on the deed, and they lived in the home and raised their seven children there.

In 2001, Hughes returned to the Property, with his three children, to care for his aging parents and his disabled brother.  In January 2003, Hughes's parents refinanced their home using a reverse mortgage.  Unlike a traditional mortgage, the borrower of a reverse mortgage is not required to make periodic payments, but rather the loan balance increases over time and the entire balance is due upon a triggering event, such as the death of the borrower.  Specifically, Patrick and Armande executed an Adjustable Rate Second Note and granted an Adjustable Rate Home Equity Conversion Mortgage on the Property to Wells Fargo Home Mortgage, Inc., for an amount up to $396,000.  The National Servicing Center oversees the Home Equity Conversion Mortgage program, in which the Federal Housing Administration ("FHA")—which is a component of HUD—insures reverse mortgages issued by private lenders to borrowers 62 and older, such as the reverse mortgage issued by Wells Fargo to Patrick and Armande.

Patrick died in 2003, and Armande died on January 15, 2017. Under the terms of the mortgage agreement, the loan became due in full upon death of the borrowers. After Armande's death, the total amount due on the loan was $306,681.70. Hughes, his children, and his brother have continued to live at the Property since Armande's death. No payment has been made on the loan. HUD began foreclosure proceedings in 2017.

Armande's will provided for her assets to be divided equally among her seven children. The oldest daughter was named as the executor, though she has not probated the estate. Thus, the deed still showed Patrick and Armande as the record owners when HUD began foreclosure proceedings.

HUD contracts day-to-day loan servicing functions to Novad Management Consulting, LLC. After Armande died in January 2017, Novad, on HUD's behalf, mailed several notices to the Property about payment of the reverse mortgage. Robert Hauge—a HUD Housing Program Specialist—detailed the following notices in his Declaration attached to the present motion, and a copy of each notice was also attached.[1]

- First on January 17, 2018, Novad sent two letters addressed to the "Estate of ARMANDE L HUGHES." One stated that the remaining balance on the loan was $317,389.97, and it was due within six months. The other explained the options available to the estate: to pay

---

[1] Hughes alleges since his mother died, he has never opened any of the mail addressed to her or to her estate. He stated that the mail gets ripped up. As discussed infra, whether Hughes received the notices is immaterial to the outcome of the case.

3

off the loan, to request that HUD approve a deed-in-lieu of foreclosure, or to request that HUD approve a short sale.

- Next on December 31, 2018, Novad sent by certified mail a Notice of Intent to Foreclose and Accelerate Mortgage Balance. The notice was addressed to "ESTATE OF ARMANDE L HUGHES" and "ESTATE OF PATRICK HUGHES II." That notice indicated that the full remaining balance had to be paid off by January 30, 2019, to avoid foreclosure.

- More than two months later on March 6, 2019, Novad sent another letter. It was addressed to "ARMANDE L HUGHES & PATRICK J HUGHES II" and stated that an updated balance amount of $332,822.12 was due.

- A week later on March 12, 2019, Novad sent a Notice to Occupants of Pending Acquisition. It was addressed to "ARMANDE L HUGHES, PATRICK J HUGHES II."

Neither Novad nor HUD received responses to any of the above letters. The only communication Novad or HUD received regarding the Property was a routine Certificate of Occupancy. The Certificate had been mailed to Armande Hughes on March 21, 2017, and Novad received a signed copy in return on May 2, 2017. The signed copy purported to be signed by Armande Hughes—weeks after her death—certifying that she was still living at the Property.

On April 10, 2019, Charles W. Gallagher, the Foreclosure Commissioner for the State of New Hampshire, sent copies of a Notice of Default and Foreclosure Sale to—among others—Patrick J. Hughes II and Armande L. Hughes, the record

4

owners of the Property.[2]  The notice indicated that a foreclosure sale would be held on May 10, 2019, at 11:00 am at the Property.

Hughes and his family were at the Property on May 10, 2019, but did not see a foreclosure sale take place.  Hughes came home for lunch at around 11:30 am and did not see a sale happening.  He stated that his sister and brother were home the entire day, and they, too, did not see a foreclosure sale.

In Gallagher's Declaration, he described the day of the foreclosure sale:  he arrived about 30-45 minutes prior to the scheduled sale and drove around to get a sense of the neighborhood.  He returned to the Property around 10:40 am and parked on the street in front of the residence.  He did not encounter any interested bidders, and thus stated that it was entirely possible that anyone who looked out the window of the residence might not realize that a foreclosure sale was taking place.  At 11:05 am there were still no interested bidders, so Gallagher left the property.  The Notice of Default and Foreclosure Sale provided that HUD would bid $351,927.35 for the Property.  Because no other bidders appeared, Gallagher sold the Property to HUD for that amount.

---

[2] The notice was also sent to lienholders (the Secretary of HUD, Wilkins Mechanical Services, Inc., City of Nashua Tax Collector, and City of Nashua Wastewater Department).  In addition, the notice was sent to Patrick J. Hughes III—one of Hughes's brothers—because Gallagher believed him to be a potential heir of Hughes's parents.  Gallagher stated in his declaration that although the statute does not require him to send notice to potential heirs, it is his practice to provide notice to anyone who could possibly have an interest in the property.

5

In July 2019, the sheriff served eviction papers on the occupants of the Property. Hughes alleges that until that time, he had not heard about any problem regarding the status of the Property or any foreclosure action.

II.   Procedural History

In November 2019, Hughes brought this action against HUD in Hillsborough Superior Court, arguing that HUD failed to provide proper notice of the foreclosure sale, and that HUD failed to conduct a foreclosure sale on the premises, both in violation of 12 U.S.C. § 3758. HUD removed the case to this court in January 2020.

HUD filed a motion to dismiss,[3] or, in the alternative, a motion for summary judgment. Doc. no. 28. With respect to the motion to dismiss, HUD argued that Hughes lacked standing and thus the court should dismiss the case under Federal Rule of Civil Procedure 12(b)(1). HUD argued that Hughes lacked standing because he was neither a party to the mortgage nor a third-party beneficiary. HUD also noted that 12 U.S.C. § 3765 expressly bars Hughes's suit, because it states that a properly conducted sale to a bona fide purchaser bars claims by the heirs of any person who received notice of the default and foreclosure sale.

Hughes responded, disputing HUD's standing and notice arguments, but conceding that the facts elicited during discovery vitiated his claim that HUD had not properly conducted the foreclosure sale on the premises. Doc. no. 30. He thus asked the court to deny HUD's motion with respect to standing and notice, but

---

[3] The court orally denied an earlier motion to dismiss by HUD.

conceded that the court should grant HUD's summary judgment motion on the claim that HUD failed to conduct the auction on the premises. Hughes did not respond to HUD's argument that as an heir of a notice recipient, he was statutorily barred by § 3765 from pursing any claim under 12 U.S.C. § 3758.

Given that HUD improperly included its statutory bar argument in a Rule 12(b)(1) motion instead of a Rule 12(b)(6) motion, the court asked for additional briefing on that issue. Doc. no. 34. The court specifically asked Hughes to brief why he was not barred by § 3765 from pursing his claims, considering the undisputed facts that the Property was sold to a bona fide purchaser, that Hughes's parents were mailed notice of the sale, and that Hughes asserts his claims as an heir to his parents.

In his supplemental brief, Hughes did not answer the court's question and instead changed his strategy, arguing that the court lacks subject-matter jurisdiction and should remand the case to state court. HUD responded, arguing that 12 U.S.C. § 3765 bars Hughes's action as a matter of law.

## DISCUSSION

I.  Subject-matter jurisdiction

The existence of subject-matter jurisdiction is a threshold issue and accordingly must be addressed prior to the merits of the underlying claims. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "To satisfy the Constitution's restriction of . . . jurisdiction to 'Cases' and 'Controversies,' Art. III, § 2, a plaintiff must demonstrate constitutional standing." Bank of Am. Corp. v.

7

City of Miami, Fla., 137 S. Ct. 1296, 1302 (2017). "To do so, the plaintiff must show an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'" Id. (citing Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).

At issue is whether Hughes has suffered an injury in fact because he was neither a party to the mortgage, nor an owner of the property. Because Hughes and his family live at the property, the risk of displacement that foreclosure by HUD poses to Hughes is sufficient to confer him standing under Article III. See Bennett v. Donovan, 703 F.3d 582, 586 (D.C. Cir. 2013) ("no dispute that the risk of displacement upon foreclosure constitutes an injury in fact" for surviving spouse of mortgagor who was not listed on reverse mortgage); Reverse Mortg. Sol., Inc. v. U.S. Dep't of Hous. & Urb. Dev., 365 F. Supp. 3d 931, 941 (N.D. Ill. 2019) (risk of displacement in pending foreclosure action constituted injury in fact). Thus, the court proceeds to the merits.[4]

II.   Statutory bar to relief

Chapter 38A (§ 3751, et seq.) of Title 12 governs how HUD may foreclose on single family mortgages such as the reverse mortgage Hughes's parents took out. It details several prerequisites to foreclosures, including notice requirements to various interested persons. Hughes claims that HUD violated these requirements.

---

[4] HUD also challenges Hughes's "prudential standing." Prudential standing is not derived from Article III and thus is not jurisdictional. Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 126, 128 n.4 (2014).

8

Under 12 U.S.C. § 3765, however, "[a] sale, made and conducted as prescribed in this chapter to a bona fide purchaser, shall bar all claims upon, or with respect to, the property sold" by "[a]ny person to whom the notice of default and foreclosure sale was mailed as provided in this chapter, and the heir, devisee, executor, administrator, successor, or assignee claiming under any such person." Neither party disputes that the Property was sold in accordance with 12 U.S.C. § 3751, et seq., to HUD, a bona fide purchaser. Further, neither party disputes that Novad mailed notice of default and foreclosure sale to Hughes's parents. Critically, § 3765 does not require that the notice be received or opened to bar Hughes's claims, only that it be mailed. Finally, neither party disputes that Hughes's interest in the Property is as an heir to his parents. Thus, § 3765 bars Hughes from pursing his claim that HUD violated the procedures for foreclosing on the Property.

Hughes's argument that the court should remand the case to state court lacks merit. First, he reiterates that as an heir, the statutory scheme grants him an interest in the Property such that he may contest the foreclosure. See 12 U.S.C. § 3758; 24 C.F.R. § 206. Next, he counterintuitively argues that, if in fact he has no legally cognizable interest in the property, then he could not have suffered an injury after all. He thus argues that the court lacks subject-matter jurisdiction, and must remand the case to state court.

Hughes is incorrect. Section 3765 bars Hughes from pursing his claims, but that is not the same as lacking a legally cognizable interest sufficient to confer Article III standing. Instead, Hughes has standing under Article III, see supra, yet Congress has chosen to expressly bar claims by heirs of persons to whom notice of foreclosure

9

was sent. See Lexmark Int'l, Inc., 572 U.S. at 128 n.4 (the absence of a valid cause of action under the statute "does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case").[5]

## CONCLUSION

The court grants HUD's motion for summary judgment (doc no. 28). The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 4, 2022

cc: Counsel of Record.

---

[5] As the court grants HUD's motion for summary judgment as to all of Hughes's claims because they are barred by § 3765, the court does not address HUD's alternative arguments for dismissal or judgment in its favor.